FILED
2026 Sep-17 PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRIME INSURANCE COMPANY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:25-cv-1140-ACA** |
| | ] | |
| **SHOWROOM ENTERPRISES, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

Defendant SET Logistics, Inc., a freight broker, hired Defendant Showroom Enterprises, LLC, a cargo company, to transport a truck owned by Defendant Custom Truck & Equipment, LLC ("CTE"). Showroom had two insurance policies through Plaintiff Prime Insurance Company. After the truck was destroyed in an accident while Showroom was transporting it, Prime sought a declaratory judgment that it owes no coverage to any of the defendants under either insurance policy. (Doc. 1 ¶¶ 30–35; *see* doc. 31). Prime now seeks summary judgment in its favor. (Doc. 31).

Concerned that neither the complaint nor the summary judgment motion established that Showroom, SET Logistics, or CTE had filed a claim with Prime, the court issued an order requiring Prime to show cause why it has standing under

Article III or the Declaratory Judgment Act. (Doc. 33). Prime responds that it has standing because SET Logistics and Showroom have filed claims for the loss of the truck. The evidence does not bear out the assertion that Showroom filed a claim but arguably does support a conclusion that SET Logistics filed a claim. Nevertheless, Prime has not established a substantial likelihood of an injury and therefore lacks standing. Accordingly, the court **WILL DISMISS** this action **WITHOUT PREJUDICE**.

## I. DISCUSSION

Because this case has reached the summary judgment stage, the plaintiff must establish standing "with the manner and degree of evidence required" at that stage. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) (quotation marks omitted). At the summary judgment stage, "the plaintiff must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (quotation marks omitted; alteration accepted). Moreover, the plaintiff bears the burden of bringing the evidence establishing standing to the court's attention. *See, e.g.*, *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997) (stating that federal courts "are not obligated to cull the record . . . in search of facts"). The court therefore draws its description of the facts from the evidence Prime cites in its response.

Showroom had two insurance policies with Prime. (Doc. 1 ¶ 1; doc. 24); *see Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (explaining that a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact"). One of the policies (the "garage policy," number SC23111505) defines a "claim" as "any written demand for payment, a civil action, Suit, or institution of arbitration proceeding." (Doc. 1-4 at 18; *see* doc. 1 ¶ 1). The other policy (the "auto policy," number PC23111504) defines a "claim" as "any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding." (Doc. 1-5 at 24; *see* doc. 1 ¶ 1). "'Damage(s)' means a compensatory sum, monetary judgment, award, or settlement, including Costs of Suit and Post Judgment Interest on Damages, that an Insured is or may reasonably become legally obligated to pay as the result of an Accident." (Doc. 1-5 at 25).

The accident at issue occurred on May 16, 2024. (Doc. 1 ¶¶ 11–12; doc. 24). On July 18, 2024, Showroom reported the accident to Prime by telephone. (Doc. 1 ¶ 14; doc. 24; doc. 34-1 at 2 ("Reported by: Brian Drye [phone number] Via Phone"). Prime filled out an "automobile loss notice" in connection with the auto policy. (Doc. 34 at 3; *see* doc. 34-1 at 2 (listing the auto policy number)). The notice lists Showroom as the insured and leaves all the boxes for information about the claimant blank. (Doc. 34-1 at 2). In the box labeled "Describe Damage," Prime wrote "Not

Provided." (*Id.*). At some point Prime "assign[ed] a claim number" (doc. 34 at 3; *see* doc. 30-6 at 4), but no claim number appears on Prime's form (*see* doc. 34 at 3.).

In December 2024, SET Logistics emailed Prime asking for information about a claim Showroom supposedly filed with Prime. (Doc. 30-6 at 4). Prime responded that Showroom had provided it with no information about "[t]his file." (*Id.* at 3). SET Logistics replied with the information Prime had indicated it was missing and stated that CTE (the owner of the truck) had submitted a claim for $368,000 to SET Logistics, which SET Logistics had not paid "pending resolution of the insurance claim."[1] (*Id.* at 2).

The next day, SET Logistics emailed Prime again, "urgently request[ing] . . . help in confirming [garage policy] coverage for your client Showroom."[2] (Doc. 34-3 at 2). This email described hiring Showroom to transport the truck, the accident, and stated that "the vehicle has been claimed as total loss in the amount of $360,000." (*Id.* at 2). The email further set out that Prime's adjuster had informed SET Logistics that Showroom's insurance policy had been canceled before the

[1] Prime alleges that this email also shows that SET Logistics made a claim for $23,746 in towing charges (doc. 34 at 4), an allegation that is flatly contradicted by the email, in which SET Logistics stated that "we understand that these [towing] costs aren't covered by Showroom's insurance with Prime, so we'll need to collect reimbursement there separately" (doc. 30-6 at 2).

[2] SET Logistics' email refers to an "Over The Road Physical Damage" policy. (Doc. 34-3 at 3). Despite using a different name, this is the garage policy. (*Compare id.* at 2 (providing a policy number for the "OTRPD policy"), *with* doc. 1-4 at 3 (listing the same policy number for the garage policy)).

accident, that certificates of insurance provided by Prime in March and June 2024 used the wrong policy numbers, and that Prime had not provided any notice of cancellation of the policy. (*Id.*). The email concluded by stating that SET Logistics had relied on the certificate of insurance to do business with Showroom and that Prime "may be held liable for damages incurred if the coverage you represented to be in place was not." (*Id.*).

After receiving this email, Prime filled out a form titled "General Liability Notice of Occurrence/Claim" associated with the garage policy. (Doc. 34-2 at 2; *see also* doc. 1 ¶ 1). Again, this form listed Showroom as the insured but provided no information about the claimant or the "injured/property damaged." (Doc. 34-2 at 2). Prime also sent letters to SET Logistics disclaiming coverage under both policies. (Docs. 1-2, 1-3).

## II. DISUSSION

"The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff*, 222 F.3d at 878. Article III of the Constitution limits federal courts to deciding "Cases" or "Controversies." U.S. Const. art. III, § 2. Absent a case or controversy, the court lacks subject matter jurisdiction over a case. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc). "Echoing the 'case or controversy' requirement of Article III, the Declaratory Judgment Act provides that a declaratory judgment may only be issued in the case

of an actual controversy." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (quotation marks omitted). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id.* (quotation marks omitted).

One of the elements of a case or controversy is standing. *Hunstein*, 48 F.4th at 1242. To show standing, a plaintiff must establish "injury in fact, causation, and redressability." *Id*. An injury in fact requires a concrete, particularized, actual injury. *Id*. When a party seeks declaratory relief, Article III standing exists only if the plaintiff "allege[s] facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11. The future injury must be "real, immediate, and definite." *Mack v. USAA Cas. Ins. Co*., 994 F.3d 1353, 1357 (11th Cir. 2021) (quotation marks omitted). "[S]tanding is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation and quotation marks omitted). The court will address each defendant separately.

*a. CTE*

CTE was the owner of the truck destroyed in the accident. (Doc. 30-6 at 2). The evidence presented in this case shows that after the accident, CTE filed a claim with SET Logistics, seeking the value of the destroyed truck from SET Logistics.

(*Id.* ("The unit has been claimed by its owner (CTE Holding Company) as a total loss. SET Logistics has not yet paid the invoice for the loss, pending resolution of the insurance claim."). But there is no evidence that CTE ever sought the value of the truck from Prime. (*See id.*). Nor has CTE appeared in the case to dispute Prime's assertion about the lack of coverage under the policies. Accordingly, Prime has not identified a substantial likelihood that CTE may in the future inflict an injury in fact on Prime by seeking payment for the loss of the truck from Prime, as opposed to SET Logistics. *See A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11; *Mack*, 994 F.3d at 1357.

*b. Showroom*

Showroom was the insured. (Doc. 1 ¶ 1; doc. 24). After the accident, Showroom called Prime to notify it about the accident, prompting Prime to fill out a form titled "automobile loss notice." (Doc. 1 ¶ 14; doc. 24; doc. 34-1 at 2). There is no indication that Showroom's call included a demand for coverage. (*See generally* doc. 34-1 at 2). The notice does not indicate that it is a claim, identify a claimant, or provide any information about damages sought. (*See id.*). Prime has provided no information about any other contact by Showroom about the accident. (*See generally* doc. 34). Nor has Showroom appeared in the case to dispute Prime's assertion about the lack of coverage under the policies. Accordingly, Prime has not identified a substantial likelihood that Showroom may in the future inflict an injury in fact on

Prime by seeking payment under the policies. *See A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11; *Mack*, 994 F.3d at 1357.

*c. SET Logistics*

SET Logistics was the freight broker. (*See* doc. 1 ¶ 2; doc. 7 ¶ 2). Months after the accident, SET Logistics emailed Prime to ask about Showroom's claim (which, as it turns out, Showroom had never filed). (Doc. 30-6 at 3–4). SET Logistics provided requested information, including the fact that CTE had filed a claim for the loss of the truck with SET Logistics, but SET Logistics was waiting to pay that claim until after "resolution of the insurance claim." (*Id.* at 2). The next day, SET Logistics sent another email asking for information about Showroom's coverage, providing information about the accident, and threatening to sue Prime if Prime had provided incorrect information in a certificate of insurance or cancelled Showroom's policy without notifying SET Logistics. (Doc. 34-3 at 2). This email prompted Prime to fill out a form titled "General Liability Notice of Occurrence/Claim" associated with the garage policy. (Doc. 34-2 at 2; *see also* doc. 1 ¶ 1). Prime then sent letters to SET Logistics disclaiming coverage under the garage and auto policies. (Docs. 1-2, 1-3). There is no indication SET Logistics has taken any other actions outside this lawsuit.

In this lawsuit, SET Logistics filed an answer denying that Prime was entitled to a declaratory judgment (doc. 7), and participated in a Federal Rule of Civil

Procedure 26(f) conference (doc. 20), but it has not done anything else—not even opposing Prime's motion for summary judgment.

Prime argues that SET Logistics' emails caused it to open third-party claims. (Doc. 34 at 6–7). Whether SET Logistics' emails constituted formal claims as defined in either policy, it is apparent that SET Logistics did seek to have Prime cover the cost of the loss. (*See* doc. 30-6 at 2; doc. 34-3 at 2). But SET Logistics seeking payment is not enough: standing requires "a substantial likelihood" of a future injury, *A&M Gerber Chiropractic LLC*, 925 F.3d at 1210–11, and the future injury must be "real, immediate, and definite," *Mack*, 994 F.3d at 1357 (quotation marks omitted). Prime asserts that the anticipated injury is its liability. (*See* doc. 34 at 7 ("Prime has shown a substantial likelihood of future injury in the form of liability under its policies.")). But Prime has presented nothing indicating any substantial likelihood that it could be held liable under the policies or even that SET Logistics will take any future action to seek payment.

To the extent Prime argues that it faces a lawsuit from SET Logistics based on the emailed threat that Prime "may be held liable for damages incurred in the coverage [Prime] represented to be in place was not" (doc. 34 at 4) (quotation marks omitted), that argument is unavailing. SET Logistics threatened to sue over Prime's inclusion of incorrect information in a certificate of insurance and its failure to notify SET Logistics of the cancellation of the policy. (*See* doc. 34-3 at 2). A declaratory

judgment that the policies bar coverage for Showroom, SET Logistics, or CTE would not affect SET Logistics' ability to bring such a lawsuit. As such, the sought-after declaratory judgment would not provide any redress to Prime, depriving it of standing. *See Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1052 (11th Cir. 2025) ("[A] decision in the plaintiff's favor must significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered.") (alterations accepted).

Prime has not presented evidence creating a substantial likelihood that it faces a real, immediate future injury from any defendant. Accordingly, it lacks standing to bring this lawsuit against any of the defendants it names. The court therefore **WILL DISMISS** this action for lack of jurisdiction.

## III. CONCLUSION

The court **WILL DISMISS** this action **WITHOUT PREJUDICE** for lack of jurisdiction.

The court will enter a separate final order.

**DONE** and **ORDERED** this September 17, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE